UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DEANA WILLIAMS,

     Plaintiff,                       Case No. 1:20-cv-11567

                                   District Judge Thomas L. Ludington

v.                             Magistrate Judge Kimberly G. Altman

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

# REPORT AND RECOMMENDTION ON CROSS MOTIONS FOR SUMMARY JUDGMENT

## I.     Introduction

This is a social security case.  Plaintiff Deana Williams brings this action under 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security (Commissioner) denying her application for Disability Insurance Benefits (DIB) and Social Security Income (SSI) under the Social Security Act (the Act).  Both parties have filed summary judgment motions (ECF Nos. 13, 15), which have been referred to the undersigned for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B).

1

For the reasons set forth below, substantial evidence supports the Administrative Law Judge's (ALJ) conclusion that Williams is not disabled under the Act.  Accordingly, it is RECOMMENDED that the Commissioner's Motion for Summary Judgment (ECF No. 15) be GRANTED, Williams's Motion for Summary Judgment (ECF No. 13) be DENIED, and that under sentence four of 42 U.S.C. § 405(g), the ALJ's decision be AFFIRMED.

## II.    Background

### A.    Procedural History

Williams was 43 years old at the time of her alleged date of onset of July 1, 2017.  (ECF No. 10, PageID.197).  She completed two years of college education and had prior work experience as a security guard and packer/laborer at a factory.  (*Id*., PageID.212).  She alleged disability due to multiple sclerosis, right side weakness, and pain.  (*Id*., PageID.211).

After Williams's DIB and SSI applications were denied at the initial level on July 19, 2018, (ECF No. 10, PageID.128-129) she timely requested an administrative hearing, which was held on March 4, 2019 before the ALJ.  (*Id*., PageID.70-103).  Williams testified at the hearing, as did a vocational expert (VE).  (*Id*.).  On April 12, 2019, the ALJ issued a written decision finding that Williams was not disabled from her date of filing to the date of the decision.  (*Id*.,

PageID.54-64).  On April 21, 2020, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.  (*Id*., PageID.35-37). Williams timely filed for judicial review of the final decision.  (ECF No. 1).

### B.    Medical Evidence

The medical record reflects that Williams's diagnosis of multiple sclerosis was confirmed on November 30, 2015 at the Detroit Medical Center's Harper Neurology Clinic.  (ECF No. 10, PageID.347).  She was then seen there on February 26, 2016, where compared to the November visit, she had no new symptoms or worsening of previous symptoms.  (*Id*.).  She was noted to have baseline issues of difficulty walking and balancing, some numbness and tingling in both legs, but no problems swallowing.  (*Id*.).  She was alert and oriented, with fluent and comprehensive speech and intact memory and cognition.  (*Id*.).

At her next visit in June 2016, Williams reported worsening walking, stiffness, and fatigue, but had similar objective findings.  (*Id*., PageID.350-351).  In October of that year, she was found to be well-nourished, well-developed, in no apparent distress, and currently in remission.  (*Id*., PageID.353).  By January 2017, she had shown good improvement on gabapentin and less stiffness and fatigue than prior visits.  (*Id*., PageID.355).  Williams followed up once again in June 2017, where she complained only of stiffness and dragging of the right leg and appeared

to be well and in no physical distress.  (*Id*., PageID.358).  She was encouraged to remain active and given information on yoga classes for multiple sclerosis patients. (*Id*., PageID.359).

At the administrative hearing, Williams testified that her condition had worsened in July 2017 and that she could no longer write or lift and had stiffness in her right leg.  (*Id*., PageID.86-87).  She further stated that she went from using a cane to using a walker over this period and that she can only sit for thirty minutes before needing to rise.  (*Id*., PageID.87, 91).  In September 2017 she reported that her pain interfered with her activities of daily living and was aggravated by walking and strenuous activity, but helped by medication and physical therapy. (*Id*., PageID.306).  In October, she complained of right-side stiffness, but no joint or muscle pain, and her general pain was controlled.  (*Id*., PageID.302).

Throughout 2018, Williams continued to ambulate with a cane and have right side weakness, and continued to treat her symptoms with medications, physical therapy, and yoga, as well as three-month follow up visits to the Harper Neurology Center.  (*Id*., PageID.362-367).  She reported that physical therapy was a "great success" and that "everything is going well" with her medication.  (*Id*., PageID.364).  However, she had to replace one medication that she could not

tolerate due to excessive hair loss, Aubagio, with another one, Tecfidera, in September 2018.  (*Id.*, PageID.366).

In November 2018, occupational therapy notes reflect that Williams was able to legibly write a grocery list and sort items into categories, use utensils, open jars, and had improved gait quality and speed while using a walker, but denied the recommendation to purchase one.  (*Id.*, PageID.407-408, 416).  She was discharged from therapy in December 2018, having met seven out of her nine goals and reaching a therapeutic plateau.  (*Id.*, PageID.389).

III.    Framework for Disability Determinations (the Five Steps)

Under the Act, DIB and SSI are available only for those who have a "disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

5

Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, No. 08-10279, 2008 WL 4793424, at *4 (E.D. Mich. Oct. 31, 2008), citing 20 C.F.R. § 404.1520; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps. . . . If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [Commissioner]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Williams was not disabled under the Act. At Step One, the ALJ found that Williams had not

6

engaged in substantial gainful activity since her alleged onset date.  (ECF No. 10, PageID.56).  At Step Two, the ALJ found that she had the severe impairments of multiple sclerosis and lumbar spondylosis.  (*Id.*)  At Step Three, the ALJ found that Williams's impairments, whether considered alone or in combination did not meet or medically equal a listed impairment.  (*Id.*, PageID.57).

The ALJ then assessed Williams's residual functional capacity (RFC), concluding that she was capable of performing light work with the following additional limitations:

> The claimant could only stand/walk 4 hours and sit 6-7 hours out of an 8-hour workday.  She requires the use of a handheld assistive device for ambulation.  [She] can occasionally push/pull with the left lower extremity, [and] can occasionally handle and finger with the right upper extremity and frequently handle and finger with the left upper extremity.  [She] can perform all postural activities occasionally but can never climb ladders, ropes or scaffolds or crawl.  [She] is limited to occasional exposure to vibration, unprotected heights, and dangerous moving machinery.

(*Id.*).

At Step Four, the ALJ found that Williams was unable to perform any past relevant work.  (*Id.*, PageID.62).  At Step Five, the ALJ determined, based in part on testimony provided by the VE in response to hypothetical questions, that Williams was capable of performing no light jobs, but one sedentary job – surveillance monitor – with 30,000 available jobs in the national economy.  (*Id.*,

PageID.63).  As a result, the ALJ concluded that Williams was not disabled under

the Act.  (*Id*., PageID.64).

## IV.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final

administrative decision under 42 U.S.C. § 405(g).  Although the court can examine

portions of the record that were not evaluated by the ALJ, *Walker v. Sec. of Health*

*& Hum. Servs.*, 884 F.2d 241, 245 (6th Cir. 1989), its role is a limited one.  Judicial

review is constrained to deciding whether the ALJ applied the proper legal

standards in making his or her decision, and whether the record contains

substantial evidence supporting that decision.  *Tucker v. Comm'r of Soc. Sec.*, 775

F. App'x 220, 224–25 (6th Cir. 2019)); *see also Bass v. McMahon*, 499 F.3d 506,

509 (6th Cir. 2007) (noting that courts should not retry the case, resolve conflicts

of evidence, or make credibility determinations); *Biestek v. Comm'r of Soc. Sec.*,

880 F.3d 778, 783 (6th Cir. 2017) (same).

An ALJ's factual findings must be supported by "substantial evidence." 42

U.S.C. § 405(g).  The Supreme Court has recently explained what that term means:

> Under the substantial-evidence standard, a court looks to an existing
> administrative record and asks whether it contains sufficient evidence
> to support the agency's factual determinations.  And whatever the
> meaning of substantial in other contexts, the threshold for such
> evidentiary sufficiency is not high.  Substantial evidence, this Court has
> said, is more than a mere scintilla.  It means—and means only—such

8

relevant evidence as a reasonable mind might accept as adequate to
support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotations omitted).

In making "substantial evidence" the relevant standard, the law preserves the
judiciary's ability to review decisions by administrative agencies, but it does not
grant courts the right to review the evidence de novo.  *Moruzzi v. Comm'r of Soc.
Sec.*, 759 F. App'x 396, 402 (6th Cir. 2018) ("The substantial-evidence standard ...
presupposes that there is a zone of choice within which the decisionmakers can go
either way, without interference by the courts.") (quoting *Blakley v. Comm'r of
Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)).  An ALJ's factual findings are
therefore subject to multi-tiered review, but those findings are conclusive unless
the record lacks sufficient evidence to support them.  *Biestek*, 139 S. Ct. at 1154.

Although the substantial evidence standard is deferential, it is not trivial. The
Court must " 'take into account whatever in the record fairly detracts from [the]
weight' " of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395
(6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487
(1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this
Court defers to that finding even if there is substantial evidence in the record that
would have supported an opposite conclusion."  *Blakley v. Comm'r of Soc. Sec.*,
581 F.3d 399, 406 (internal quotations omitted).  Finally, even if the ALJ's

decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (internal quotations omitted).

## V.    Analysis

Williams presents four arguments in seeking summary judgment.  She argues that:  (1) the opinion of her treating nurse practitioner, Dequanna Johnson, R.N., was not properly considered by the ALJ; (2) Williams would be absent from work beyond the amount an employer would allow due to physical therapy appointments; (3) the job of surveillance monitor identified by the VE is semi-skilled and the ALJ failed to determine that Williams could perform the job; and (4) the ALJ did not properly determine that work exists in significant numbers in the economy based on the single identified job of surveillance monitor.  Each argument will be addressed in turn below.

## A.

Williams argues that the ALJ did not consider the entirety of her treating nurse practitioner Dequanna Johnson's opinion in his decision under 20 C.F.R. § 416.920c and 20 C.F.R. § 404.1520c.  She notes that although the ALJ specifically addressed Johnson's opined limitations on Williams's walking and standing, he

failed to address her opinion on Williams's sitting, grasping, and fingering limitations, her unscheduled breaks, her likely absences, and interference with her attention and concentration caused by her symptoms.  (ECF No. 13, PageID.622-624, citing ECF No. 10, PageID.286-291).

The SSA recently revised its rules regarding opinion evidence.  *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844.  For claims filed on or after March 27, 2017, the ALJ must articulate "how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record."  20 C.F.R. §§ 404.1520c(b), 416.920c(b).  The ALJ evaluates the persuasiveness of the medical opinions and prior administrative medical findings by utilizing the following five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors.  20 C.F.R. §§ 404.1520c(c), 416.920c(c).  Supportability and consistency are the most important factors and the ALJ must explain how she considered these factors in her decision.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

"[T]he appropriate level of articulation will necessarily depend on the unique circumstances of each claim."  82 Fed. Reg. at 5854.  Furthermore, "a medical opinion without supporting evidence, or one that is inconsistent with

evidence from other sources, will not be persuasive regardless of who made the medical opinion." *Id*. Under the new rules, a registered nurse is considered an acceptable medical source for impairments within his or her licensed scope of practice. 20 C.F.R. §§ 404.1502(a)(7), 416.902(a)(7).

Johnson completed a medical questionnaire regarding Williams on February 28, 2018, noting that she had been treating Williams since May 2016. (ECF No. 10, PageID.286-287). She noted that Williams suffered from relapsing remitting multiple sclerosis as indicated by an MRI of the brain, and that it is a chronic progressive debilitating disease that causes Williams to have balance issues, muscle spasms with pain, deteriorating cognition and memory, and urinary and bowel incontinence. (*Id*.). Johnson only listed one functional limitation, "unable to walk independently," but opined that due to this and a safety risk to herself and others posed by her potential to fall down, she is not capable of performing a full-time job. (*Id*.).

Johnson also completed a medical assessment form on the same date, indicating additional limitations. (*Id*., PageID.289-291). She opined that Williams would be limited to lifting or carrying no more than five pounds and walking for 30 minutes, and only 10 minutes without interruption, due to her "right leg weakness/stiffness" and need for a cane to ambulate; that she can only sit for four

12

hours per workday and only 2.5 hours without interruption, due to risk of blood

clots from sitting continuously; and that Williams would need an unscheduled

break of 30 to 45 minutes every 1.5 hours, for a total of four hours of rest in an

eight-hour day.  (*Id*.).  Additionally, Johnson indicated that Williams would require

four days of absence per month for her impairments or treatment and would be

frequently interrupted by pain or other symptoms as to interfere with her attention

and concentration needed to perform even simple tasks.  (*Id*.).

Considering Johnson's opinions jointly as permitted by 20 C.F.R. §§

404.1520c(b)(1), 416.920c(b)(1), the ALJ found the opinion that Williams was

"unable to walk independently" vague, as it was unclear if this simply meant that

Williams needed a cane to ambulate, or if a walker or wheelchair was necessary.

(*Id*., PageID.62).  He further found that the assessment that Williams could not

sustain full-time work did "not appear to consider work [that was] limited to

sedentary standing and walking requirements," as it was based on her inability to

walk.  (*Id*.).

Williams is correct that Johnson set forth other limitations that were not

explicitly considered by the ALJ in that section of his decision.  But many of these

limitations were not necessary to consider.  For instance, Johnson opined that

Williams would be absent for approximately four days every month due to

13

impairments or treatment.  But this impression is not considered a medical opinion

under the regulations.  *See, e.g., Murray v. Comm'r of Soc. Sec.*, No. 1:10-cv-297,

2011 WL 4346473, at *7 (W.D. Mich. Aug. 25, 2011) ("A treating physician's

estimate of how often a patient who is not working would likely be absent from

work if [s]he had a job is not a medical opinion, and it is not entitled to any

particular weight."); *Valdes v. Comm'r of Soc. Sec.*, No. 1:08-cv-872, 2010 WL

911181, at *8 (W.D. Mich. Mar. 12, 2011) ("A treating physician's estimate of how

often a patient who is not working would likely be absent from work if she had a

job ... is not a medical opinion, and it is not entitled to any particular weight,

especially in cases such as this, where the doctor's statement provides no

explanation regarding how the conclusion was reached, or any reference to the

specific, objective medical evidence supporting it.").  Likewise, Johnson's opinion

that Williams is unable to perform full-time work need not be considered, though

the ALJ did so anyway, because it is a question reserved to the Commissioner.  20

C.F.R. §§ 404.1520b(c)(3)(i), 416.920b(c)(3)(i).

Williams concentrates on Johnson's opinion that she can stand and walk no

more than 10 minutes without interruption and 30 minutes at a time; sit for only

four hours in a workday; and would need unscheduled rest periods throughout the

workday.  Of note, Williams provides no additional evidentiary support for these

14

opined limitations, though supportability and consistency with the record are the two most important factors in evaluating opinion evidence.  Williams instead rests on the contention that the ALJ should have individually evaluated each limitation in the opinion.  But the ALJ did so indirectly when he found the July 17, 2018 opinion of state agency consultant Yacob Gawo, M.D., to be persuasive based on its consistency with the evidence as a whole.  (ECF No. 10, PageID.61-62, citing ECF No. 10, PageID.110-113).  Dr. Gawo reviewed the record up to the date of his opinion, including Johnson's opinion, and found that Williams could stand and/or walk for up to four hours of an eight-hour workday, and sit for six hours of the workday.  (*Id*.).  Dr. Gawo also assessed additional postural and environmental limitations consistent with the relevant portions of the RFC.[1]  (*Id*.).

Prior to considering the opinion evidence, the ALJ considered the objective medical record, noting that Williams was able to walk 25 feet without assistance on at least two occasions; declined to wear an ankle orthotic to prevent falling; reported falling infrequently (including only three falls during one year) without the orthotic; she had "great success" with physical therapy.  (ECF No. 10, PageID.59-61, citing PageID.351, 356, 360, 362-64, 424, 436, 469, 474, 476, 523,

---

[1] *See* ECF No. 15, PageID.650-651 n.3, Commissioner's brief, detailing minor differences between Dr. Gawo's assessment and the RFC.

526, 534).  She also had improved gait quality and speed while using a walker in November 2018, but rejected the recommendation to purchase one.  (*Id.*, PageID.61, citing PageID.414).

The Court must "read the ALJ's decision as a whole." *Koch v. Comm'r of Soc. Sec. Admin.*, No. 5:19-CV-13631, 2021 WL 1565422, at *5 (E.D. Mich. Feb. 11, 2021), *report and recommendation adopted sub nom. Koch v. Comm'r of Soc. Sec.*, 2021 WL 1186502 (E.D. Mich. Mar. 30, 2021) (citing *Athey v. Comm'r of Soc. Sec.*, No. 13-cv-12528, 2014 WL 4537317, at *4 (E.D. Mich. Sept. 11, 2014); *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004) ("Because it is proper to read the ALJ's decision as a whole ... it would be a needless formality to have the ALJ repeat substantially similar factual analyses" in different parts of the decision.)).  Further, the ALJ can satisfy his duty to consider the medical opinions by "*indirectly* attacking the supportability of the treating [source's] opinion or its consistency with other evidence in the record." *Stewart v. Comm'r of Soc. Sec.*, 811 F. App'x 349, 352 (6th Cir. 2020) (citing *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 440 (6th Cir. 2010)) (emphasis in original).  This was done by crediting Dr. Gawo's contradictory and less restrictive opinion, which Williams does not challenge.

Overall, based on the ALJ's summary of the record, the weight given to Dr. Gawo's opinion, and Williams's failure to support the contention that Johnson's opinion should have been given greater weight, any error in the ALJ's consideration of Johnson's opinion evidence is harmless. The reasons for the ALJ's treatment of Johnson's opinion are apparent in the decision, and Williams has marshaled no evidence to rebut them. "[W]here 'remand would be an idle and useless formality,' courts are not required to 'convert judicial review of agency action into a ping-pong game.' " *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004) (quoting *NLRB v. Wyman–Gordon,* 394 U.S. 759, 766 n. 6 (1969)). There is no cause for remand based on the treatment of the nurse practitioner's opinion.

## B.

Williams next argues that her continued physical therapy sessions would cause her to exceed the level of absenteeism acceptable to an employer. The VE testified that being absent more than one and a half days per month due to impairments or treatment would be work preclusive. (ECF No. 10, PageID.100). As Williams notes, the medical record shows that she attended nine physical therapy sessions from August 29, 2017 to September 28, 2017, and ten sessions from May 15, 2018 to June 15, 2018. (*Id*., PageID.442-467, 500-515). In addition,

17

a discharge summary from December 11, 2018 indicates that nine additional sessions were attended prior to and possibly including that date.  (*Id.*, PageID.374).[2]  "Thus," Williams states, "the record demonstrates that she would have attended physical therapy 28 times between September 28, 2017 and December 11, 2018."  (ECF No. 13, PageID.625).

Williams's argument that these sessions would cause impermissible absences from past or future employment rests on the unfounded assumption that each session requires an entire day's absence from work.  This fact has simply not been established.  As the Commissioner notes, almost all of Williams's sessions lasted approximately 45 minutes, with none longer than one hour.  Williams "has not established any reason to think that [s]he is unable to attend physical therapy sessions after work, on the weekends, during lunch, or on some other schedule." *Pryor v. Comm'r of Soc. Sec.*, No. 14-13325, 2015 WL 12683977, at *7 (E.D. Mich. Aug. 21, 2015), *report and recommendation adopted*, 2015 WL 6735336 (E.D. Mich. Nov. 4, 2015); *see also Barnett v. Apfel*, 231 F.3d 687, 691 (10th Cir. 2000) (holding that courts need not assume that a doctor's appointment would

---

[2] A second discharge summary from the same date indicates that Williams had nine treatments but missed two of them.  (ECF No. 10, PageID.388).  The reason for this discrepancy is unclear, but for the sake of Williams's argument, the Court will assume that Williams attended nine sessions of physical therapy between June 16, 2018, and December 11, 2018.

consume an entire day).  Thus, Williams's argument that physical therapy sessions would cause work-preclusive absenteeism is unsupported by evidence or authority, and the ALJ did not err in not submitting such absences to the VE in his proposed hypothetical.

C.

Williams's third argument is that while the ALJ found Williams to be "not disabled" regardless of her transferable job skills, (ECF No. 10, PageID.63), the work she was found able to perform (Surveillance-system Monitor, DOT § 379.367-010, 1991 WL 673244)[3] involves "tending or guarding equipment, property, material, or persons against loss, damage or injury," which renders it "semiskilled work." *Titles II & Xvi: Determining Capability to Do Other Work-the Med.-Vocational Rules of Appendix 2*, SSR 83-10, 1983 WL 31251 (S.S.A. 1983). Thus, Williams contends, the ALJ needed to assess whether Williams was equipped with the skills necessary for the surveillance monitor position.

Williams provides no authority for this position, and as the Commissioner notes in rebuttal, the Dictionary of Occupational Titles states that the specific vocational preparation (SVP) for the position is "Level 2." *See* Surveillance-

---

[3] The DOT classifies this position as "surveillance-system monitor," but the Court will refer to it as "surveillance monitor," as it was referred by the VE and the ALJ.

19

system Monitor, DOT § 379.367-010, 1991 WL 673244.  And under a newer,
more specific Social Security Ruling, "unskilled work corresponds to an SVP of 1-
2." *Pol'y Interpretation Ruling: Titles II & Xvi: Use of Vocational Expert &
Vocational Specialist Evidence, & Other Reliable Occupational Info. in Disability
Decisions*, SSR 00-4P, 2000 WL 1898704 (S.S.A. Dec. 4, 2000).  Furthermore, the
VE cited the position's listing in the Dictionary of Occupational Titles, and its SVP
of Level 2, when stating it to be unskilled work at hearing.  (ECF No. 10,
PageID.99).

It is a well-established canon of statutory and regulatory interpretation that
"the specific governs the general."  *RadLAX Gateway Hotel, LLC v. Amalgamated
Bank*, 566 U.S. 639, 645 (2012) (quoting *Morales v. Trans World Airlines,
Inc.,* 504 U.S. 374, 384 (1992)).  Thus, the specific regulation of the surveillance
monitor position being unskilled must govern over the more general rule from SSR
83-10 that like-sounding positions are semiskilled.  This avoids "the superfluity of
a specific provision that is swallowed by the general one, 'violat[ing] the cardinal
rule that, if possible, effect shall be given to every clause and part of a statute.' "
*Id*. (quoting *D. Ginsberg & Sons, Inc. v. Popkin,* 285 U.S. 204, 208 (1932)).  Based
on application of the proper regulations and rulings, and the VE's reliance on them

20

in testimony, the ALJ was correct not to consider transferable job skills when finding that Williams could perform the surveillance monitor position.

D.

Lastly, Williams contends that the ALJ did not satisfy his burden to show that work exists in significant numbers based on the surveillance monitor position alone. This is partly because in 2010, an unpublished split decision from the Sixth Circuit granted remand based on the ALJ's reliance on the surveillance monitor position to satisfy the Step Five inquiry. Noting that the VE relied upon the Dictionary of Occupational Titles (DOT), which had not been updated since 1991 (as is still the case), the court found that "common sense dictates that when such descriptions appear obsolete, a more recent source of information should be consulted." *Cunningham v. Astrue*, 360 F. App'x 606, 615 (6th Cir. 2010). Based on the DOT description, the *Cunningham* court found the position to be "potentially vulnerable for this reason," and ultimately remanded the matter, as the court could not guarantee adequate review. *Id*.

After *Cunningham*, "courts in the Sixth Circuit seem[ed] split as to whether the job 'surveillance-system monitor' can furnish, on its own, a significant number of jobs in the national economy." *Webb v. Comm'r of Soc. Sec.*, No. CV 16-11786, 2017 WL 2312827, at *10 (E.D. Mich. Apr. 25, 2017), *report and*

21

*recommendation adopted*, 2017 WL 2306467 (E.D. Mich. May 26, 2017).  Some

courts simply wrote off the decision in *Cunningham* as one that had not been cited

by the Sixth Circuit since and was interpreted narrowly by other courts.  *Id*. (citing

*Jones v. Comm'r of Soc. Sec.*, No. 14-13709, 2015 WL 12696225, at *7 (E.D.

Mich. Sept. 30, 2015), *report and recommendation adopted*, 2016 WL 47968 (E.D.

Mich. Jan. 5, 2016); *Morris v. Comm'r of Soc. Sec.*, No. 1:16-CV-433, 2017 WL

1159809, at *11 (W.D. Mich. Mar. 29, 2017)); *see also Kidd v. Berryhill*, No.

5:17-CV-420-REW, 2018 WL 3040894, at *8 (E.D. Ky. June 19, 2018) ("The

Court adds the observation, while continuing to echo the many already-levied

criticisms, that *Cunningham* cited no legal authority for its broad musings, instead

principally relying on the panel majority's 'common sense' to reach its

conclusions.").  Others noted that the concerns in *Cunningham* regarding the

obsolescence of the surveillance monitor position were valid.  *Webb* at *10 (citing

*Rollston v. Comm'r of Soc. Sec.*, No. 1:16-CV-168, 2016 WL 6436676, at *4

(W.D. Mich. Nov. 1, 2016); *Coulter v. Colvin*, No. 1:13-CV-00011-LLK, 2013

WL 3992445, at *2 (W.D. Ky. Aug. 2, 2013); *Kuleszo v. Barnhart*, 232 F. Supp.

2d 44, 55 (W.D.N.Y. 2002); *Williams v. Colvin*, No. 1:14-CV-02183, 2015 WL

5165458, at *7-8 (N.D. Ohio Sept. 2, 2015)).  "Nevertheless, the weight of

authority tends to advise against remand grounded *solely* upon speculation as to the

DOT's accuracy with respect to the description of 'surveillance-system monitor.' "

*Webb* at *10 (emphasis in original) (citing *Smathers v. Comm'r of Soc. Sec.*, No.

2:14-CV-500, 2015 WL 401017, at *5 (S.D. Ohio Jan. 28, 2015), *report and*

*recommendation adopted*, 2015 WL 5568324 (S.D. Ohio Sept. 22, 2015); *Belew v.*

*Astrue*, No. CIV.A. 2:11-107-DCR, 2012 WL 3027114, at *10 (E.D. Ky. July 24,

2012)).

Recently, another unpublished Sixth Circuit case, *O'Neal v. Comm'r of Soc.*

*Sec.*, 799 F. App'x 313 (6th Cir. 2020), addressed the issue.  The *O'Neal* court

addressed the "apparent confusion" among the lower courts and clarified that the

ALJ can rely on the DOT, as well as the VE's testimony, to establish the existence

of jobs in the national economy in significant numbers.  *Id*. at 317 (citing *Kyle v.*

*Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010)).  The *O'Neal* court noted

that in *Kyle*, published after *Cunningham*, the court "reiterated that the ALJ can

rely on the DOT to establish that work exists in the national economy. … and no

binding post-*Cunningham* decision from this court has remanded to the

Commissioner based on a vocational expert's reliance on the DOT."  *Id*.

The *O'Neal* court also indicated that this does not mean there can be no challenge

to the DOT regarding its obsolescence, or if the VE's testimony conflicts with the

DOT, but these issues must be raised at the hearing.  *Id*. at 317-318.  "[T]he ALJ

23

[is] under no duty 'to conduct an independent investigation' into the vocational expert's testimony to determine whether it was correct." *Id.* (quoting *Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 374 (6th Cir. 2006)).  Thus, Williams's objection based solely on the position of surveillance monitor being obsolete, or insufficient to establish significant numbers of jobs in the economy, cannot be sustained post-*O'Neal*.

Williams also objects that while the VE testified that there were 30,000 surveillance monitor jobs existed in the national economy, the DOT states that at most 10,280 of those jobs exist.  *See* ECF No. 13-1.  However, as just noted, it is the claimant's responsibility to raise this discrepancy on cross-examination under *O'Neal*.  "O'Neal had a chance to cross-examine the vocational expert during the hearing, and he did not.  We cannot know if cross-examination would have suggested that the surveillance-system monitor job was in fact obsolete.  For example, a cross-examination could have shown that the surveillance-system monitor job requires far more training than it did when the DOT was created." *Id.* at 318.  *See also Munger v. Comm'r of Soc. Sec.*, No. 19-12830, 2021 WL 1186494, at *5 (E.D. Mich. Mar. 30, 2021) (Ludington, J.) (recognizing the waiver of such issues on cross-examination post-*O'Neal* despite the difficulty in preparing questions without knowing beforehand which jobs will be identified by the VE).

As the Commissioner notes, Williams's counsel at the hearing did not question the VE regarding the number of surveillance monitor positions in the national economy.  *See* ECF No. 10, PageID.100-101.

In addition to noting the discrepancy between the VE's job number and that from the DOT, Williams argues that a more up-to-date figure from "Job Browser Pro, published by SkillTRAN" indicates only 2,994 surveillance monitor jobs nationally, and only 224 in the state of Michigan.  (ECF No. 13, PageID.628, citing ECF No. 13-1).  However, this court is confined to review evidence that was available to the ALJ.  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 478 (6th Cir. 2003).  This research was not presented as evidence during or prior to the hearing, and neither the VE nor the ALJ had an opportunity to consider it.  As such, the 30,000-job figure provided by the VE and relied upon by the ALJ remains unchallenged.  *See Wills v. Comm'r of Soc. Sec.*, No. 2:19-CV-12865, 2020 WL 7585877, at *3 (E.D. Mich. Dec. 22, 2020) (declining to consider Job Browser Pro information that was not before the ALJ); *Meyers v. Comm'r of Soc. Sec.*, No. 1:17-CV-706, 2018 WL 4266244, at *2 (W.D. Mich. Aug. 15, 2018), *report and recommendation adopted*, 2018 WL 4252452 (W.D. Mich. Sept. 6, 2018) (same).

Williams also argues that the ALJ failed to consider the factors laid out in *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988) to determine whether the 30,000

jobs available to her was a significant number of jobs.  These factors include "the

level of claimant's disability; the reliability of the vocational expert's testimony;

the reliability of the claimant's testimony; the distance the claimant is capable of

traveling to engage in the assigned work; the isolated nature of the jobs; the types

and availability of such work and so on."  *Harmon v. Apfel*, 168 F.3d 289, 292 (6th

Cir. 1999) (citing *Hall v. Bowen* at 275; *Stewart v. Sullivan,* No. 89–6242, 1990

WL 75248, at *4 (6th Cir. 1990)).  But "these factors [are] suggestions only—the

ALJ need not explicitly consider each factor."  *Id*.

Here, Williams has provided no authority for, or examples of, 30,000 jobs

requiring explicit consideration of the *Hall v. Bowen* factors or being considered an

insignificant number.  Further, Williams suggests no reason that *any* of the factors

would weigh in her favor or prevent her from access to the available surveillance

monitor jobs in the national economy.  "Issues adverted to in a perfunctory

manner, unaccompanied by some effort at developed argumentation, are

deemed waived.  It is not sufficient for a party to mention a possible argument in

the most skeletal way, leaving the court to ... put flesh on its bones."  *McPherson v.

Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (citations omitted)).  As such, the

undersigned declines to consider this argument further.  The ALJ's Step Five

analysis concerning available jobs to Williams in the national economy should be upheld.

VI.    Conclusion

For the reasons set forth above, it is RECOMMENDED that the Commissioner's motion be GRANTED, Williams's motion be DENIED, and that under sentence four of 42 U.S.C. § 405(g), the Commissioner's decision be AFFIRMED.

Dated: June 23, 2021                    s/Kimberly G. Altman
Detroit, Michigan                        KIMBERLY G. ALTMAN
United States Magistrate Judge

## NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation. Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 23, 2021.


s/Marie E. Verlinde
MARIE E. VERLINDE
Case Manager